605 A.2d 475

**Barbara BRENNON, Appellant,**

v.

**PHILADELPHIA GAS WORKS, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 21, 1991.

Decided March 12, 1992.

Reargument Denied May 1, 1992.

Francis J. Bernhardt, for appellant.

Nolan N. Atkinson, Jr., for appellee.

Before DOYLE, and KELLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Barbara Brennon appeals from an order of the Court of Common Pleas of Philadelphia County which granted a

motion for summary judgment filed by the Philadelphia Gas Works (PGW).

The relevant facts are as follows. In January, 1986, employees of PGW drilled bar holes into the street in the 1800 block of Church Street because a potential gas leak had been reported.[1] Due to vibrations allegedly caused by the drilling of these holes, the vent box which leads to the trap in Brennon's sewer line collapsed and caused a back-wash of sewer water into her basement. Brennon notified the PGW employees working outside and two of these employees entered her home and saw the water in the basement. Two or three weeks later an adjuster from PGW also came to Brennon's house and viewed the water on the floor. Sometime thereafter, Brennon went to the basement to light the hot water heater, slipped in the backwash and fell against the heater. Brennon claimed, *inter alia,* injuries resulting from the presence of the raw sewage in her basement and also injuries sustained in the fall.

Brennon filed a complaint in the Court of Common Pleas of Philadelphia County against PGW alleging that PGW was negligent in the following manner:

a. failing to conduct their work assignment in a safe manner.

b. negligently and carelessly drilling in an area adjacent to residential plumbing and other fixtures.

c. failing to properly plan, execute and carry out said drilling so as not to cause injury to persons and property in the area.

d. failing to respect rights and safety of persons lawful-ly in the area of defendant's work place.

e. failing to comply with proper standard and procedure of drilling the type of holes in question.

---

1. The parties dispute the proximity of the drilling to Brennon's home. Brennon contends that the drilling took place adjacent to her residence; PGW contends that the drilling was conducted at some distance from her home.

f.  violating general and particular ordinances, rules and/or statutes regarding drilling, excavation, demolition and the like.

g.  failing to safeguard and protect the rights and position of the plaintiff.

h.  being otherwise negligent and careless at law and in fact.

PGW filed an answer in which it asserted that it is a local agency within the meaning of Section 8501 ,of the Judicial Code, 42 Pa.C.S. § 8501, entitled to the shield of governmental immunity under Section 8542 of the Judicial Code, 42 Pa.C.S. § 8542. On January 15, 1991, the common pleas court granted PGW's motion for summary judgment.[2] This appeal followed.[3]

On appeal, two issues are presented for our review: whether PGW is a "local agency" under Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541;[4] and, if PGW is a local agency, whether Brennon's cause of action falls within an exception to governmental immunity.

■ We first consider whether PGW, a collection of real and personal property owned by the City of Philadelphia (City) and operated by the Philadelphia Facilities Manage-

---

**2.** The case was originally referred to a board of arbitrators which found in favor of Brennon on February 6, 1989. PGW filed an appeal from this award on February 17, 1989 and a trial in the Court of Common Pleas of Philadelphia County was commenced on January 14, 1991. At the close of the first day's trial proceedings, the parties agreed that the common pleas court would entertain PGW's motion for summary judgment. It was also agreed that the opening remarks of Brennon's counsel to the jury would be, in effect, the offer of proof and that the court would consider the motion accepting as true those statements of evidence that Brennon said she would produce in her counsel's opening.

**3.** Brennon filed a notice of appeal in the Superior Court. By order dated May 14, 1991, the appeal was transferred to Commonwealth Court.

**4.** Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541, provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damage on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."

ment Corporation, is a local agency.[5] For such purpose, we first look to the provisions of the Philadelphia Home Rule Charter (Charter), 351 Pa.Code §§ 1.1–100—12.12–503, which concern the City's authority to operate facilities for the production of gas.

Section 1.1–102 of the Charter, 351 Pa.Code § 1.1–102, vests executive and administrative power of the City in the Mayor and such other officers, departments, boards and commissions as are designated and authorized in the charter. Section 3.3–100 of the Charter, 351 Pa.Code § 3.3–100, creates, *inter alia*, the Department of Public Property and further creates the Gas Commission as a departmental commission within the Department of Public Property.

Section 3.3–909 of the Charter, 351 Pa.Code § 3.3–909, provides for the appointment of the Gas Commission. Section 3.3–909 provides:

> The Gas Commission shall be constituted and appointed in accordance with the provisions of such contract as may from time to time be in effect between the City and the operator of the City gas works, or, in the absence of a contract, in such manner as may be provided by ordinance.

Section 5.5–902 of the Charter, 351 Pa.Code § 5.5–902, pertains to the powers and duties of the Gas Commission. Section 5.5–902, provides:

**5.** In *Philadelphia Facilities Management Corp. v. Biester*, 60 Pa.Commonwealth Ct. 366, 431 A.2d 1123 (1981), involving a challenge to the constitutionality of the Utility Service Tenants Rights Act, Act of November 26, 1978, P.L. 1255, 68 P.S. §§ 399.1–399.18, this Court determined that PGW was not an identifiable legal entity or agency and it was therefore precluded from being a party plaintiff. Accordingly, the Court dismissed PGW from the case. Subsequently, the Supreme Court decided *Smith v. City of Philadelphia*, 512 Pa. 129, 516 A.2d 306 (1986), a case challenging the constitutionality of the limit of recovery of damages under Section 8553 of the Judicial Code, 42 Pa.C.S. § 8553. The City of Philadelphia, PGW and the Philadelphia Facilities Management Corporation were named as defendants in this action. While the Supreme Court did not address PGW's capacity to be sued, neither did it sua sponte dismiss PGW from the suit. *See also Commonwealth v. Philadelphia Gas Works*, 484 Pa. 60, 398 A.2d 942 (1979). Neither party in this present case, however, has questioned whether PGW may properly be a party to this action.

The Gas Commission shall exercise such powers and perform such duties as may from time to time be provided in contracts between the City and the operator of the City gas works or in the absence of a contract, by ordinances.

Section 5.5–900 of the Charter, 351 Pa.Code § 5.5–900, requires the Department of Public Property to perform certain functions pertaining to the operation of gas facilities. Section 5.5–900 provides:

(d) *Gas, Electricity and Steam.* The Department shall supervise the operation of leases of City facilities for the production and transmission of gas ... It shall operate and itself, or by contract, maintain, repair and improve City gas ... facilities not under lease to others and when authorized by the Council, acquire, design and construct additional such facilities. The Department shall from time to time inspect and test the quality of gas ... furnished to the City and its inhabitants, and the facilities for their transmission and meeting.

The Department of Public Property is also given authority under Section 5.5–901 of the Charter, 351 Pa.Code § 5.5–901, to set rates and charges for furnishing gas. Section 5.5–901 provides:

In accordance with such standards as the Council may from time to time ordain, the Department of Public Property shall fix and regulate rates and charges for the use of City transit facilities and for furnishing gas ... from City facilities when any such facilities are not under lease to others. The standards pursuant to which rates and charges shall be fixed by the Department shall be such as to yield to the City at least an amount equal to operating expenses and interest and sinking fund charges on any debt incurred or about to be incurred for the purposes of the facility for which rates and charges are being fixed. In computing operating expenses, there shall be included proportionate charges for all services performed for the Department by all officers, departments, boards or commissions of the City.

Although the City may enter into contracts for the management of its facilities, the City, through the Department of Public Property and the Gas Commission, retains responsibility for operation of the facilities for the production and transmission of gas and authority for setting rates. We, therefore, hold that the immunity from suit enjoyed by the City, extends to PGW as an integral part of services offered by the City.

■ Having determined that PGW is entitled to assert the defense of governmental immunity, we now consider whether Brennon's cause of action falls within one of the exceptions to that immunity. We consider this question reviewing the record in the light most favorable to Brennon as the non-moving party, giving her all reasonable inferences and resolving all doubts as to the existence of a genuine issue of material fact against PGW. *Snyder v. Bristol Township*, 119 Pa.Commonwealth Ct. 201, 546 A.2d 1320 (1988).

Section 8542(b) of the Judicial Code, 42 Pa.C.S. § 8542(b), pertaining to acts which may impose liability, provides in relevant part:

> The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . . .
>
> (5) *Utility service facilities.*—A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

The trial court found that Brennon could not meet the requirements of this Section because she could not prove the negligent maintenance of a facility owned by PGW. But, Section 8542(b)(5) does not necessarily require a plaintiff to prove the *negligent* maintenance of a facility in order to establish the existence of a *dangerous* condition. Brennon need only demonstrate that such a dangerous condition existed, that PGW had knowledge of the condition, and that the dangerous condition created the reasonably foreseeable risk that PGW workmen would negligently cause her sewer pipe to break, which in turn caused sewer water to back up into her basement. A potential gas leak emanating from PGW's gas mains could be found to be a dangerous condition.[6] Drilling bar holes in an attempt to locate this leak adequately demonstrates that PGW had notice of such a condition. While there may be some question as to whether the kind of injury Brennon suffered was foreseeable under the meaning of Section 8542(b)(5), this is a matter for a jury to decide.

Because there are material facts which remain unresolved, we hold that the common pleas court erred in granting summary judgment. Accordingly, we reverse the order of the Court of Common Pleas of Philadelphia County and remand this case for further proceedings consistent with this opinion.

## ORDER

NOW, March 12, 1992, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

**6.** Brennon does not specifically allege the existence of a potential gas leak. However, in its brief, PGW states that a potential gas leak had been reported and that the bar holes were drilled in the street in the vicinity of Brennon's residence in an attempt to determine where the gas was leaking.